1

2

3

4

5

6

7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 DONNA RAMIREZ-BAKER,                    CASE NO. CV-F-008-601 LJO DLB

12                          Plaintiff,       **ORDER ON DEFENDANTS' MOTION TO**
       vs.                                   **DISMISS,    STAY,    AND    COMPEL**
13                                           **ARBITRATION** (Doc. 8)

14

15 BEAZER HOMES, INC., et al,

16                          Defendants.

17 _____/

18                          **INTRODUCTION**

19        Defendants Beazer Homes, Inc, Celia Nevarez and Walter Diamond (collectively "Beazer") move

20 to compel Plaintiff Donna Ramirez-Baker ("Ms. Ramirez-Baker) to arbitrate this dispute in accordance

21 with Beazer's alternative dispute resolution program and the Federal Arbitration Act, 9 U.S.C. §1, *et seq*.

22 Ms. Ramirez-Baker opposed the motion on June 9, 2008.   Beazer replied on June 17, 2008.   The Court

23 finds this matter suitable for decision on the pleadings and VACATES the June 24, 2008 oral argument

24 pursuant to Local Rule 78-230(h).   For the reasons discussed below, this Court GRANTS Beazer's

25 motion to compel arbitration.

26 ///

27 ///

28 ///

                                            1

1

**BACKGROUND**

2        Ms. Ramirez-Baker applied for a position at Beazer on February 22, 2007.  The employment

3   application contains an "Applicant Statement," which requires the applicant's signature.  In its last

4   paragraph, the Applicant Statement contains information regarding Beazer's alternative dispute resolution

5   program, called "Resolving Concerns at Beazer" ("RCB Program").  A potential employee is informed

6   that:

7           by signing and submitting this application, [potential employees] agree to the exclusive
            resolution of all grievances, disputes, and claims arising out of or relating to [his or her]
8           application for employment, [] employment, or [] termination of employment by Beazer
            Homes ("Cover Claims") by the terms and conditions set forth in the RCB Program.
9           (Helms Declaration, Ex. 1, Beazer Employment Application, page 4).

10   An applicant signing the applicant statement is informed further that covered claims, as defined by the

11   RCB Program, "include, but are not limited to, federal, state, and local statutory, common law or

12   contractual claims, or contractual claims for wages, breach of any express or implied promises, torts, and

13   discrimination on any basis."  *Id.*  Ms. Ramirez-Baker signed the Applicant Statement.

14        Ms. Ramirez-Baker accepted Beazer's employment offer, and began her employment at Beazer

15   on March 13, 2007 as a New Home Counselor.[1]  Beazer terminated Ms. Ramirez-Baker's employment

16   on November 12, 2007.

17        Ms. Ramirez-Baker filed this action against Beazer on March 3, 2008, alleging: (1) wrongful

18   discharge for reporting improper practices of her employer; (2) wrongful discharge for refusal to commit

19   an unlawful act; (3) retaliation pursuant to California Labor Code §1102.5(b); (4) religious discrimination

20   under 42 U.S.C. §2000e-2; (5) religious discrimination under California Government Code §12940; and

21   (6) breach of employment contract.  On May 1, 2008, Beazer removed this action to this Court from the

22   Superior Court of Fresno County.  Beazer now moves to stay these proceedings and to compel Ms.

23   Ramirez-Baker to submit her claims to Beazer's RCB Program.

24   ///

25   _____

26   [1]Beazer claims that on February 27, 2007, Beazer sent Ms. Ramirez-Baker an employment offer letter.  Ms.
     Ramirez-Baker denies receiving an employment offer letter from Beazer.  Beazer attached  an employment offer letter it
27   purportedly sent to Ms. Ramirez-Baker, which reads in pertinent part: "Employment with Beazer Homes is subject to the
     terms and procedures of the...RCB...Program, which provides the sole and exclusive means of resolution of all grievances,
28   disputes, and claims arising out of or relating to applications of employment, employment, or termination of employment."
     (Helms Declaration, Ex. 2, Employment Offer, page 3).

## ANALYSIS & DISCUSSION

### The Federal Arbitration Act

Beazer moves to stay the proceedings and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §1, *et seq*. ("FAA").  The FAA governs the enforcement of arbitration agreements involving interstate commerce.  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002).  The FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court...for an order directing that arbitration to proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. §4.  An arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2.  Because Ms. Ramirez-Baker was employed in California, this Court looks to California contract law to determine whether the arbitration agreement is valid and enforceable.  *Circuit City v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002).

If a party fails to comply with the arbitration agreement, this Court will stay the proceedings and issue an order to compel arbitration. 9 U.S.C. §§ 3, 4.  "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).  "[W]here a contract contains an arbitration clause, there is a presumption of arbitrability." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).   Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Three Ways Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991).

With these standards in mind, the Court turns to whether an arbitration agreement exists between the parties and, if so, whether that agreement is enforceable.

### Existence of Arbitration Agreement

The "first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  The FAA "does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation, and enforcement of contracts generally." *Cione v. Foresters Equity Servs*., 58 Cal. App. 4th 625, 634 (1997).  Therefore,

1 Beazer first must establish that an arbitration agreement existed between Beazer and Ms. Ramirez-Baker.

2      Beazer submits that the arbitration agreement between Beazer and Ms. Ramirez-Baker is the

3 provision in the Applicant Statement signed by Ms. Ramirez-Baker and included with Ms. Ramirez-

4 Baker's employment application.  Ms. Ramirez-Baker argues that no arbitration agreement exists

5 because: (1) the employment application is not a contract, and (2) the later employment contracts she

6 signed superceded the arbitration agreement, if any.

7      In support of her  position that the Applicant Statement is not a contract, Ms. Ramirez-Baker

8 points to a paragraph, separate from the arbitration paragraph, in the Applicant Statement, which reads:

> If I am hired, I understand that I am free to resign at any time, with or without cause and with or without prior notice...*This application does not constitute an agreement or contract for employment for any specified period or duration.* I understand that...no implied oral or written agreements contrary to the foregoing express language are valid unless they are in writing and signed by the President/CEO of Beazer Homes." (Emphasis added).

13 Ms. Ramirez-Baker contends that this provision expressly disclaims the creation of a contract.

14      The language of the Applicant Statement above is limited in scope.  The disclaiming sentence is

15 found within a paragraph related to employment only.  The provision disclaims an agreement for

16 employment, but does not mention arbitration.  Conversely, the language of the arbitration provision

17 establishes an agreement.  *See* Applicant Statement ("by signing and submitting this application, *I agree*

18 to the exclusive resolution of all grievances...as set forth in the RCB Program...I understand that as a

19 result of my and Beazer Homes' *mutual agreement* to resolve claims exclusively through the RCB

20 Program...")(emphasis added).  Thus, the language of the contract does not disclaim the creation of a

21 contract.

22      Next, Ms. Ramirez-Baker argues that the written employment agreements signed by Ms. Ramirez-

23 Baker subsequent to her employment application supercede all provisions included in the employment

24 application.  (*See* Declaration of Ramirez-Baker, Exhibits A and B).  Ms. Ramirez-Baker contends that

25 each written employment agreement contained an integration clause, which provides:

> The foregoing constitutes the entire agreement between New Home Counselor and Broker with respect to the subject matter covered, and supercedes, cancels, and nullifies any and all prior agreements and understandings.  It is agreed that all prior understandings and agreements made between the parties respecting this transaction are merged in this Agreement, which may be executed in counterparts and which, along, fully and

completely express their agreement, and that there are no representations, warranties or agreements except as herein set forth in this Agreement and in any exhibits annexed thereto.

The integrated clause of the employment contracts is limited to the terms of the employment contracts. "[B]y its terms the scope of the integration clause was 'limited to the subject matter contained' in the written employment agreement." *Cione*, 58 Cal. App. 4th at 635 (quoting *Hayter Trucking Inc. v. Shell Western E & P, Inc.*, 18 Cal. App. 4th 1, 14 (1993). As the *Cione* court, 58 Cal. App. 4th at 635, explained:

> Although containing provisions about the length of [] employment and methods for its termination, the written employment agreement did not specify any forum for resolving any disputes between the parties whether arising from [] separation from employment or otherwise. Neither did the written employment agreement refer to [the separate] arbitration agreement...or otherwise make any mention of arbitration. In sum, neither in its integration clause nor elsewhere did the written employment contract suggest it stated the parties' entire agreement as to all matters or that it otherwise superceded [the parties'] prior written arbitration agreement.

These considerations apply here. Neither written employment contract references arbitration or the RCB Program. Neither employment contract specifies a forum for resolving disputes between the parties. "Absent any showing that [a party's] written employment agreement [] was either expressly or implicitly inconsistent with his arbitration obligation under [separate agreement], [a party] may not rely on the written employment agreement's silence about dispute resolution to establish that such agreement superseded his [separate agreement] to arbitrate." *Thorup v. Dean Witter Reynolds, Inc.*, 180 Cal. App. 3d 228, 234 (1986).

Moreover, even if the written employment agreement is wholly integrated, the arbitration obligation is not superseded by the integration clause. "Evidence would be properly admissible to prove the existence of a separate agreement as to any matter on which the document is silent and is not inconsistent with its terms even though the instrument appeared to state a complete agreement." *Cione*, 58 Cal. App. 4th at 635 (quoting *Masterson v. Sine*, 68 Cal. 2d 222, 226 (1968)). "Since the written employment agreement was silent on the forum for dispute resolution, [the] arbitration agreement ...was probative and admissible as not inconsistent with the terms of such employment agreement...[and] any doubts must be resolved in favor of arbitration." *Cione*, 58 Cal. App. 4th at 636 (citing *Thorup*, 180 Cal. App. 3d at 234). Accordingly, an arbitration agreement exists between Beazer and Ms. Ramirez-Baker.

## Enforceability of the Arbitration Agreement

Next, the Court determines whether the arbitration agreement at issue is valid and enforceable under section 2 of the FAA, 9 U.S.C. §2. *Ticknor v. Choice Hotels, Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). "Generally applicable contract defenses, such as fraud, duress, or unconscionability" arising under state law, are applied to determine whether an arbitration cause is valid and enforceable. *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (2000). "Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination." *Ticknor*, 265 F.3d 931, 937 (citing *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 641 (9th Cir. 1988)). Thus, this Court relies on California contract law to determine the issues raised in this action.

The Court considers what type of rights Ms. Ramirez-Baker's claims implicate. If the arbitration agreement implicates unwaivable public rights, such as discrimination or public policy claims, the arbitration agreement must satisfy minimum requirements. *Fitz v. NCR Corp.*, 11 Cal. App. 4th 702, 711 (2004). "Where the plaintiff asserts private rights rather than (or in addition to) unwaivable public rights, the agreement to arbitrate those claims is tested only against conscionability standards." *Id.* at 712 (quoting *Abramson*, 115 Cal. App. 4th at 652). Here, Ms. Ramirez-Baker presents both public rights (public policy, discrimination) and private rights (breach of contract). *Id.* Therefore, this Court analyzes whether the arbitration contract is unconscionable.

"If a contract is unconscionable, under California law courts may refuse to enforce it." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). To be unenforceable, the arbitration clause must be both procedurally and substantively unconscionable, but not necessarily to the same degree. *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003). Ms. Ramirez-Baker argues that the arbitration agreement is unenforceable, because it is both procedurally and substantively unconscionable. The Court considers each separately.

### Procedural Unconscionability

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Servs.*, Inc., 70 Cal. App. 4th 1322, 1329 (1999). Procedural unconscionability requires either of two factors: oppression or surprise. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997). Oppression "arises from an inequality in

1   bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* at 1531.

2   Beazer's arbitration contract "is procedurally unconscionable because it is a contract of adhesion:

3   a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other

4   party the option of either adhering to its terms without modification or rejecting the contract entirely."

5   *Adams*, 279 F.3d at 893 (citing *Stirlen*, 51 Cal. App. 4th. at 1533-34 (concluding that contracts of

6   adhesion are procedurally unconscionable)).  Beazer has superior bargaining power over Ms. Ramirez-

7   Baker. Beazer does not consider an employment applicant, such as Ms. Ramirez-Baker, unless they agree

8   to the arbitration provision. The Applicant Statement, which Beazer prepared as a form and requires

9   applicants to sign, provides: "Finally, I understand that if I do not sign the Application and agree to

10   submit all Covered Claims to the RCB Program, I will not be considered for employment with Beazer

11   Homes."  Thus, the arbitration provision of the Applicant Statement presents the arbitration clause as a

12   condition precedent to employment without an opportunity to negotiation or opt out.  California courts

13   routinely rule that "take it or leave it" provisions within an adhesion contract are procedurally

14   unconscionable.  *Ingle*, 328 F.3d at 1171 (9th Cir. 2003) (applying California law to reject adhesion

15   contract with arbitration condition precedent as unconscionable); *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th.

16   1064, 1071 (2003); (arbitration clause that is non-negotiable condition precedent to employment is

17   procedurally unconscionable); *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002) ("When

18   the weaker party is presented the clause and told to "take it or leave it" without the opportunity for

19   meaningful negotiation, oppression, and therefore procedural unconscionability, are present.");

20   *Armendariz* v. *Found. Health Psychcare Servs*., 24 Cal. 4th 83, 115 (2000) (preemployment arbitration

21   contract procedurally unconscionable because "it was imposed on employees as a condition of

22   employment and there was no opportunity to negotiate.").  Additionally, "[t]he time [Ms. Ramirez-Baker]

23   had to consider the contract is irrelevant." *Ingle*, 328 F.3d at 1172.

24   Having found the arbitration agreement to be procedurally unconscionable, the Court considers

25   next whether the agreement is substantively unconscionable.

26   **Substantive Unconscionability**

27   Substantive unconscionability focuses "on overly harsh or one-sided results." *Armendariz*, 24 Cal.

28   4th at 114.  An arbitration clause is substantively unconscionable if  "the terms of the agreement...are so

7

1   one-sided as to shock the conscience." *Kinney*, 70 Cal. App. 4th at 1329.  California courts "look beyond

2   facial neutrality and examine the actual effects of the challenged provision." *Ting*, 319 F.3d at 1149.

3        Beazer argues that the RCB Program meets the minimum requirements of an employment

4   arbitration agreement, as required by California law.  "[W]hen an employee is bound by a  predispute

5   arbitration agreement to adjudicate statutory employment rights, the arbitration will be subject to certain

6   minimal requirements." *Gentry v. Superior Court*, 42 Cal. 4th 443, 457 (2008).  The minimal standards

7   for an employment arbitration are: (1) a neutral arbitrator must be provided; (2) damages normally

8   available may not be limited; (3) discovery must be "sufficient to adequately arbitrate the statutory

9   claim"; (4) written arbitration decision and sufficient judicial review are required; (5) the employer must

10  "pay all types of costs that are unique to arbitration." *Gentry*, 42 Cal. 4th at 456-57; *Armendariz*, 24 Cal.

11  4th 83, 103, 106, 113); *Little*, 29 Cal. 4th at 1076.  These requirements are "necessary to enable an

12  employee to vindicate...unwaivable rights in an arbitration forum" so that arbitration cannot be misused

13  to accomplish a waiver of an employee's rights. *Little,* 29 Cal. 4th at 1079.

14       Ms. Ramirez-Baker argues that the RCB Program is substantively unconscionable. Ms. Ramirez-

15  Baker asserts that several of the arbitration provisions fails to demonstrate the "'modicum of bilaterality'

16  required under California contract law" for an adhesive employment arbitration agreement.  *Ingle*, 328

17  F.3d at 1174 (quoting *Armendariz*, 24 Cal. 4th at 117-118).  The Court considers each of Ms. Ramirez-

18  Baker's challenges to the RCB Program below.

19  **Discovery Limitations**

20       An employment arbitration provision must provide for adequate discovery.  "Employees are at

21  least entitled to discovery of sufficient to adequately arbitrate their statutory claim, including access to

22  essential documents and witnesses." *Martinez v. Master Protection Corp*., 118 Cal. App. 4th 107, 118

23  (2004) (quoting *Armendariz*, 24 Cal. 4th at 104). While "discovery limitations are an integral part of the

24  arbitration process...[a]dequate discovery is not synonymous with unfettered discovery." *Id.*

25       The RCB Program adopts the discovery rules of the Federal Rules of Civil Procedure, with one

26  exception–depositions "may be allowed by agreement of the party or by order of the Arbitrator." (RCB

27  Program, p.18).  Ms. Ramirez-Baker argues that the RCB Program is substantively unconscionable,

28  because it does not provide for depositions as a matter of right, and is repugnant to Fed. R. Civ. P.

1  30(a)(1). Beazer argues that California courts uphold provisions similar to the RCB Program's deposition

2  provision.

3      The RCB Program discovery provisions are consistent with Section 1283.05 of the California

4  Arbitration Act, Cal. Code Civ. P. §1283.05(a) and (e), which provides:

5      [T]he parties to an arbitration shall have the right to take depositions and obtain discovery
       regarding the subject matter of the arbitration, and to that end, shall use and exercise all
6      of the same rights, remedies, and procedures, and be subject to all of the same duties,
       liabilities, and obligations in the arbitration...as if the subject matter of the arbitration
7      were pending before a superior court of this state in a civil action other than a limited civil case,
       subject to the limitations as to depositions...*Depositions for discovery shall not be taken
8      unless leave to do so is first granted by the arbitrator or arbitrators.* (Emphasis added)

9  This provision grants "the full panoply of discovery" provided by the California Arbitration Act. , 118

10 Cal. App. 4th at 716.  Parties "may agree to something less than the full panoply of discovery provided

11 in [California] Code of Civil Procedure section 1283.05," so long as discovery is "sufficient to adequately

12 arbitrate their statutory claim." *Armendariz*, 24 Cal. 4th at 105-06.  Here, the parties have not agreed to

13 something less than the full panoply of discovery.  Instead, as in  Cal. Code Civ. P. §1283.05, the parties

14 are granted the same procedures as if the case were pending in this federal court, with one limitation on

15 depositions.  That limitation is provided for in the California Arbitration Act.  Thus, the RCB Program

16 provides for the "full panoply of discovery" in a California arbitration.

17      The deposition provision does not limit unconscionably Ms. Ramirez-Baker's discovery rights.

18 "[A] limitation on discovery is one important component of the simplicity, informality, and expedition

19 of arbitration," however, "the desire for simplicity must be balanced with the need for adequate

20 enforcement of [public policy] claims." *Armendariz*, 24 Cal.4th at 106, n. 11 (internal citations omitted).

21 The RCB Program discovery provisions are adequate, because it entitles Ms. Ramirez-Baker "access to

22 essential documents and witnesses*, as determined by the arbitrator(s)*." *Armendariz*, 24 Cal. 4th at 106

23 (emphasis added).  Unlike the cases relied upon by Ms. Ramirez-Baker, the RCB Program deposition

24 provision does not limit the number of depositions a party may take.  Rather, it allows the neutral

25 arbitrator to determine the scope of the costly and formal procedure.  Moreover, the RCB Program does

26 not otherwise limit discovery.  Therefore, although the "employer is presumably in possession of the vast

27 majority of evidence that would be relevant to employment-related claims," *Kinney*, 70 Cal. App. 4th at

28 1332, the agreement is bilateral, because the written discovery provisions allow Ms. Ramirez-Baker full

9

access to that evidence.  Under these circumstances, the RCB Program arbitration discovery provisions are not overly one-sided.[2]  *Armendariz*, 24 Cal. 4th at 114.

### Claims Subject to Arbitration

The RCB Program applies to "disputes, grievances, or claims" between a former employee and Beazer.  The RCB Program specifically includes and excludes certain types of claims. "Covered claims" are identified as:

1. Claims relating to involuntary terminations, such as layoffs and discharges;
2. Claims for unlawful employment discrimination and harassment, based on, for example....religion;
3. Claims for retaliation based on legally protected activity and/or whistleblowing;
4. Claims relating to state or federal family and medical leave acts;
...
6. Tort claims, including negligent hiring/retention, defamation, invasion of privacy, infliction of emotional distress, tortious interference, assault/battery, and other intentional or negligence-based torts;
7. Claims of violation of public policy;
8. Claims based on express or implied contracts, including non-competition agreements or other restrictive covenants, and claims based on the violations of the duty of good faith and fair dealing, fiduciary duties, or similar duties;
9. Claims based on trade secrets, trademarks, copyrights, patents, and other intellectual property;
...
11. Claims relating to commissions, bonuses, wages, hours, overtime or other compensation issues.

Ms. Ramirez-Baker argues that the RCB Program is substantively unconscionable because it applies, in effect, only to claims brought by employees.  Where an employer seeks to limit arbitration to only those claims brought by an employee, and effectively exempts itself from arbitration for those claims asserted by the employer, the arbitration agreement is "unfairly one-sided." *Ingle*, 328 F.3d at 1173. "[T]his unjustified one-sidedness deprives the arbitration of the 'modicum of bilaterality' that the California Supreme Court requires for contracts to be enforceable under California law." *Id*. (citing *Adams*, 279 F.3d 889, 894 (9th Cir. 2002) and *Armendariz*, 24 Cal. 4th at 117).

Beazer points out that the RCB Program differs materially from the arbitration agreements found to be unconscionable based on the claims subject to arbitration.  In *Ingle*, the agreement applied expressly

---

[2]Ms. Ramirez-Baker argues further that the protective order provision and the disclosure of witnesses provision are substantively unconscionable.  These provisions are bilateral, applicable to both parties equally, and do not create a benefit to the employer that is so overly one-sided as to be unconscionable.  RCB Program, p. 17.

10

to claims brought by employees only. 328 F.3d at 1173 ("Circuit City's arbitration agreement applies only to 'any and all employment related legal disputes or claims of an Associate,' thereby limiting its coverage to claims brought by employees). Additionally, the claims "expressly mentioned as arbitrable are those claims employees would assert." *Id*. at 1174. By contrast, both employer and employee are subject to the RCB Program.[3] Moreover, the RCB Program covers claims raised by both employer and employee. The "covered claims" include those claims generally raised by an employee, such as issues raised by the termination of employment. However, the RCB Program also includes the following as covered claims: "Claims based on express or implied contracts, including non-competition agreements or other restrictive covenants, and claims based on violations of the duty of good faith and fair dealing, fiduciary duties, or similar duties." RBP Program, p.3. Covered claims also include tort claims (conversion, tortious interference, or defamation), and claims based upon intellectual property rights (such as trade secrets). *Id*. These are claims the employer may raise against the employee. Accordingly, the RCB Program's covered claims are bilateral.

**Unilateral Termination/Modification**

Ms. Ramirez-Baker asserts that the RCB Program is substantively unconscionable because it provides Beazer with the unilateral authority to terminate or modify the arbitration agreement terms. The RCB Program provision governing modifications, amendments, and termination, reads:

> The RCB Program may be modified or amended, in whole or in part, or terminated by the Company, on January 1st of any year only after the Company provides at least thirty (30) days written notice of such modification, amendment, or termination. In the event the Program is modified or amended after the Company is placed on notice of a Covered Claim(s) by a Covered Individual(s), the Covered Individual(s) shall have the right to have the Covered Claim(s) resolved pursuant to the version of the Program that was in effect immediately following the modification or amendment. Similarly, in the event the Program is terminated after the Company is placed on notice of a Covered Claim(s) by a Covered Individual(s), the Covered Individual(s) shall have the right to have the Covered Claim(s) resolved pursuant to the version of the Program that was in effect immediately prior to the termination.

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Ingle*, 328 F.3d at 1179 (citing *United Steelworkers of*

---

[3] The signed Applicant Statement arbitration agreement provides: "I understand that as a result of my and Beazer Homes' mutual agreement to resolve claims exclusively through the RCB Program, I and Beazer Homes hereby waive any rights to a jury trial."

*America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).   Where an arbitration agreement provides for the unilateral termination and/or modification by the employer upon thirty days notice to the employee, there can be no meaningful opportunity to negotiate the terms of the agreement, and thus, no agreement by the employee to submit to the new terms of the agreement.  *Ingle*, 328 F.3d at 1178.  Beazer argues that its right to modify or terminate the contract is limited, because it allows the employee to choose which version it will apply to a claim.   That limitation occurs only if an employee raises a claim, however, and does not limit Beazer's ability to modify the contract without providing the employee a meaningful opportunity to negotiate the terms.  Accordingly, a provision to allow Beazer the unilateral power to terminate or modify the contract is substantively unconscionable.

### Statute of Limitations

Arbitration agreements may not shorten the statute of limitations applicable to a party's employment claims. *David v. O'Melveny & Meyers*, 485 F.3d 1066, 1076-77 (9th Cir. 2007) (provisions shortening the time to bring employment-related statutory claims held substantively unconscionable). However, the RCB Program does not shorten the applicable statute of limitations applicable to Ms. Ramirez-Baker's claims.  *See Id.* (applying "notice requirement" as statute of limitations accrual). Although the RCB Program encourages an employee to submit their claim within 30 days, "[t]his is only a guideline, however, and shall not be applied to prevent the resolution of Covered Claims submitted within the time frame provided by any statute of limitations that would otherwise be applicable to the Covered Claim(s)." (RCB Program, p. 9) (original in bold-face type).  Therefore, the RCB Program does not shorten the statute of limitations applicable to Ms. Ramirez-Baker's claims.   Accordingly, this provision is not unconscionable.

### Arbitration Filing Fees

Ms. Ramirez-Baker contends that the RCB Program is unlawful, because it requires her to pay a filing fee.  The RCB Program requires the moving party to "pay the lesser of a $100 filing fee or the amount of the filing fee prescribed by the state or federal trial court" RCB Program, p.21.  The provision provides further that: "Under no circumstances shall [Plaintiff] be required to pay more than...she would be required to pay to initiate a lawsuit in the state or federal court." *Id*.

"[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration

agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." *Armendariz*, 24 Cal. 4th at 110-11 (italics in original).  Here, the RCB Program does not require Ms. Ramirez-Baker to pay any type of expense she would otherwise incur in these proceedings.  Courts require a person to pay a filing fee to initiate a civil action.  Moreover, the filing fee provision requires the moving party to pay the *lesser* amount between $100 and what she would be required to pay to initiate a lawsuit in state or federal court.  Thus, this provision includes implicitly a waiver of the filing fee in cases of indigence, because an indigent person is not required to pay a filing fee in federal court. 28 U.S.C. §1915(a).  If applicable, this provision provides for an amount lesser than $100, and is the amount a person would be required to pay in federal court.  Thus, indigents are protected by the wording of this clause.  Additionally, this fee, if any, is paid directly to the "DR Administrator and shall be used to defray the costs of arbitration." RCB Program, p.21.  *Cf. Ingle*, 328 F.3d at 1177 (filing fee substantively unconscionable where there is no alternative fee and fee is paid directly to the employer).  Accordingly, the filing fee provision is not substantively unconscionable.

**Cost-Splitting**

An arbitration agreement that purports to allocate costs of the arbitration proportionately between the employer and the employee is unenforceable. *Ingle*, 328 F.3d at 1117.  "It is unlawful to require an employee who is bound by a mandatory employment arbitration agreement to pay the costs of the arbitration." *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 93 (2003) (citing *Little*, 29 Cal. 4th at 1080-81).  Here, the parties do not dispute that Beazer agrees to pay the costs of the arbitration pursuant to the RCB Program, including the arbitrator's fee and travel expenses, the cost of renting the arbitration hearing room, the employee's expenses, if still employed, for the time spent in arbitration (up to seven days).

Ms. Ramirez-Baker argues that one provision may require her to bear the costs of experts and attorneys fees, even if she is a prevailing party.  The challenged provision reads: "Each party shall pay his/her/its own experts' and/or attorneys' fees, unless the Arbitrator requires otherwise as part of any relief awarded." RCB Program, p.21. Ms. Ramirez-Baker contends that this provision gives the arbitrator complete discretion to award attorneys' fees and does not require the arbitrator to follow the law.

13

The RCB Program provides that the arbitrator "may award any damages, remedy, or other relief...that would have been available had the claim been asserted in court." RCB Program, p. 19. The arbitrator is required to apply federal and state substantive law and "has no authority...to exceed the scope of available remedies described." *Id.* at 20-21. Thus, if certain relief is not authorized by the controlling substantive law, or otherwise available in court, it is not available through the RCB Program. This precludes Ms. Ramirez-Baker's concern that she may be a prevailing party and yet still be required to pay attorneys' fees. Such a circumstance is not rooted in law and the arbitrator would have no authority to order it. Accordingly, this provision is not substantively unconscionable.

**Confidentiality**

An overbroad confidentiality clause in an arbitration agreement favors the employer over the employee and may be substantively unconscionable. *David v. O'Melveny*, 485 F.3d at 1078-79. Here, the RCB Program confidentiality clause is limited in scope. The RCB Program confidentiality agreement states: "No aspect of this confidentiality provision is intended to limit the parties' rights to discovery...or the Arbitrator's discretion with respect to determining the proper scope of discovery." RCB Program, p.7. *Cf David*, 485 F.3d at 1079 (confidentiality provision unconscionable because it precluded employees from investigating their claims and contacting witnesses). Because the confidentiality provision does not limit Ms. Ramirez-Baker's discovery rights, and is not overly broad, it is not unconscionable.

**Neutral Arbitrator**

An arbitration between an employer and an employee must provide a neutral arbitrator. *Little*, 29 Cal. 4th at 1076. Beazer argues that the RCB Program provides for a neutral arbitrator. While Ms. Ramirez-Baker does not dispute the neutrality of the arbitrator provided for in Level 4 of the RCB Program, Ms. Ramirez-Baker argues that the RCB Program allows a mediator that may disfavor Ms. Ramirez-Baker in Level 3.

The RCB Program consists of a four-step dispute resolution process:

Level 1:     Human Resources Review; followed, if necessary, by
Level 2:     Management Review; followed, if necessary by
Level 3:     Non-Binding Mediation; followed, if necessary by
Level 4:     Binding Arbitration.

The RCB Program provides that "Each level must be completed before proceeding to the next level

14

1    unless the Parties have jointly agreed, in writing to bypass one or more steps prior to Binding Arbitration

2    (Level Four).   Here, the parties' arguments relate only to the rules of the  binding arbitration, as described

3    in Level 4 of the RCB Program.   This Court construes the limited nature of the arguments to demonstrate

4    that the parties have agreed to bypass Levels 1-3.[4]  Accordingly, this Court need not address the neutrality

5    of the Level 3 mediator.

6          **Conclusion**

7          Both procedural and substantive unconscionability must be present for a court to refuse to enforce

8    an arbitration agreement under the doctrine of unconscionability. *Armendariz*, 24 Cal. 4th at 114.  As

9    discussed more fully above, this Court finds that the contract is procedurally unconscionable, because it

10   is an adhesion contract.  This Court finds further that the unilateral termination/modification provision

11   of the RCB Program is substantively unconscionable.  "If the court as a matter of law finds that the

12   contract or any clause of the contract to have been unconscionable...the court may refuse to enforce the

13   contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so

14   limit the application of any unconscionable clause as to avoid any unconscionable result." *Id.* at 121-22

15   (quoting Cal. Civ. Code section 1670.5(a)).  The court has discretion to "refuse to enforce the contract

16   as a whole if it is permeated with unconscionability, or it may strike any single clause or group of clauses

17   which are so tainted or are contrary to the essential purpose of the agreement." *Id*.

18         The RCB Program does not permeate with unconscionability.  Most provisions, as discussed more

19   fully above, contain the essential bilaterality of an arbitration agreement between an employer and an

20   employee.  Because the substantively unconscionable provision is "collateral to the main purpose of the

21   contract," severance is appropriate.  *Armendariz*, 24 Cal. 4th at 124.  Moreover, this provision was not

22   implicated in this case and did not adversely affect Ms. Ramirez-Baker.  Additionally, Court considers

23   the federal and state policy in favor of arbitration.  *Three Ways Mun. Water Dist*, 925 F.2d 1136 at 1139.

24   Therefore, this Court compels arbitration in accordance with Level 4 of the RCB Program, but severs the

25   unilateral modification/termination clause from the arbitration agreement.

26   ///

27

28

---

[4]The Court makes no determination as to the enforceability of Levels 1-3 of the RCB Program.

## CONCLUSION AND ORDER

For the foregoing reasons, this Court:

        1.     GRANTS Beazer's motion to compel arbitration, pursuant to 9 U.S.C. §4 and Level 4 of the RCB Program;

        2.     STAYS the proceedings, pursuant to 9 U.S.C. §3;

        3.     STRIKES the unilateral provision from the RCB Program;

        4.     VACATES the June 24, 2008 hearing; and

        5.     ORDERS the parties, no later than September 23, 2008, to file a joint status report with this Court.

IT IS SO ORDERED.

**Dated:   June 20, 2008**               **/s/ Lawrence J. O'Neill**
                                               UNITED STATES DISTRICT JUDGE